AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>6/18/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: EC DEPUTY |
|---|

# UNITED STATES DISTRICT COURT
for the
Central District of California



FILED
CLERK, U.S. DISTRICT COURT
06/18/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ARO DEPUTY

United States of America

v.

JOSHUA CLIFFORD WILLIAMS,

Defendant

Case No.   8:25-mj-00495-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of October 2, 2024 in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(a)(2) | (Use of an Unauthorized Access Device) |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Dane Fahey
Complainant's signature

Dane Fahey, Special Agent (IRS-CI)
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   June 18, 2025

Judge's signature

City and state:   Santa Ana, California   Hon. John D. Early U.S. Magistrate Judge
Printed name and title

AUSA: Kristin Spencer

**AFFIDAVIT**

I, Dane Fahey, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") with the Internal Revenue Service – Criminal Investigation ("IRS-CI") and have been so employed since July 2022. I am currently assigned to the Lake Forest post of duty in the Los Angeles Field Office. In my current position, I investigate financial crimes, including fraud, money laundering, and criminal violations of the Internal Revenue Code. I received approximately six and a half months of training from the Federal Law Enforcement Training Center located in Glynco, Georgia. I received a Bachelors Degree in Business Administration – Finance, and a Masters Degree in Accountancy from the California State University, Fullerton. Additionally, I am a Certified Public Accountant (inactive) registered with the State of California. In the course of my career with IRS-CI I have regularly interviewed witnesses and subjects, analyzed financial records, and participated in the execution of search warrants and arrest warrants.

## II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of a criminal complaint against and arrest warrant for JOSHUA CLIFFORD WILLIAMS for a violation of 18 U.S.C. § 1029(a)(2) (Use of an Unauthorized Access Device).

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and

witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

### III. SUMMARY OF PROBABLE CAUSE

4. On or about October 2, 2024, JOSHUA WILLIAMS ("WILLIAMS") received a consultation for cosmetic surgery from Dr. Semira Bayati ("Dr. Bayati"). Following that consultation, WILLIAMS indicated that an individual named B.B., who WILLIAMS represented to be his aunt, would be financing the procedure. Dr. Bayati's office communicated with B.B. via phone and email, and received an authorization, signed by WILLIAMS and B.B., to charge $20,000 to B.B.'s CareCredit account. Dr. Bayati's office also received an image via email of B.B.'s California Driver's License, now believed to be fraudulent. After charging the $20,000 to B.B.'s CareCredit account, Dr. Bayati's office was informed that the real B.B. had filed a fraud claim stating that the charge was not authorized. When Dr. Bayati's office asked WILLIAMS about the fraud claim, WILLIAMS stated that his aunt was now in Dubai and that he would speak with her. Following that interaction, WILLIAMS did not attend any future post-operation appointments at Dr. Bayati's office.

## IV. STATEMENT OF PROBABLE CAUSE

5. On or about May 12, 2025, a Special Agent with the Department of Homeland Security, Office of the Inspector General ("DHS-OIG") obtained information from Synchrony Bank ("Synchrony"). The information indicated that JOSHUA WILLIAMS was the subject of an investigation into fraud activity that occurred on October 3, 2024. According to the information, a victim, B.B., had reported that her credit card account had been used to conduct an unauthorized transaction in the amount of $20,000 in the Newport Beach, California area.

6. On or about May 12, 2025, the same DHS-OIG agent obtained documentation from Synchrony related to the suspected fraud. According to that documentation, B.B. reported on October 30, 2024 that a $20,000 charge on her CareCredit account to Semira Bayati, M.D., was not authorized by her. B.B. further reported that she did not have the credit card associated with that account in her possession and had not used it in many years.

7. The documentation obtained from Synchrony included a letter submitted to Synchrony by the office of Dr. Bayati. According to that letter, defendant was seen by Dr. Bayati for a consultation regarding a cosmetic procedure on October 2, 2024. Dr. Bayati included a copy of a driver's license for the person who received the service, which bore defendant's name, date of birth, and photograph. At the time of his consultation, defendant represented that B.B. was his aunt and that she would be financing the procedure using her CareCredit account.

8.  Dr. Bayati also sent Synchrony a photograph of a California driver's license with B.B.'s name that had been submitted to the provider's office on October 2, 2024 by an email address that purported to be B.B.'s. Based on my training and experience, I believe that the driver's license in the photograph was fraudulent. For instance, the front side of the driver's license bore the symbol indicating that it was a California REAL ID, but the back side of the license indicated that it could not be used for federal purposes.

9.  On or about May 13, 2025, I compared the photograph on the fraudulent California driver's license to B.B.'s actual California driver's license photograph obtained from the California Department of Motor Vehicles. It was obvious that the person in the photograph on the fraudulent California driver's license was not B.B.

10. Dr. Bayati also submitted paperwork to Synchrony that was signed by defendant and indicated that the procedure would be paid for using B.B.'s CareCredit account. The paperwork also bore a signature that purported to be B.B.'s, but did not match the signature on the fraudulent California driver's license. A post-operative note indicated that the procedure was performed on defendant on October 11, 2024.

11. On or about June 5, 2025, a DHS-OIG agent interviewed B.B., who told the agent the following:

   a.  Sometime last year, B.B. received an email notification that the limit on her credit card had been raised. B.B. had not used the credit card in a long time and assumed

that the limit increase was an effort by the credit card company to entice her to start using the credit card. The following day, B.B. received a notification from Experian credit services indicating that there was unusual activity on that credit card. B.B. was told that there was a $20,000 charge that was recently incurred on the credit card for plastic surgery.

      b.  B.B. immediately contacted Synchrony, her credit card company, to file a complaint. B.B. was instructed to provide a statement telephonically to initiate the fraud filing. B.B. contacted Synchrony several more times to confirm that she would not be responsible for the fraudulent charges. Eventually Synchrony confirmed that B.B. would not be responsible for the $20,000 charge.

      c.  B.B. was not aware of the $20,000 charge when it occurred and did not authorize it.

12. On or about June 12, 2025, I interviewed Dr. Semira Bayati, who told me the following:

      a.  Dr. Bayati saw WILLIAMS for a consultation regarding a surgical procedure on October 2, 2024. Following the consultation, WILLIAMS told Dr. Bayati's office staff that WILLIAMS's aunt, B.B., would be paying for the procedure using her CareCredit account.

      b.  Dr. Bayati's office staff spoke with an unknown female claiming to be B.B. by telephone.[1] The unknown female

---

[1] Dr. Bayati's office staff had previously told me that the phone number they used to communicate with the person they believe to be B.B. was a phone number subscribed to TIFFANY
*(footnote cont'd on next page)*

agreed to pay for the surgery using B.B.'s CareCredit account and provided B.B.'s CareCredit account number. B.B.'s office staff also received an email from an email address that appeared to be B.B.'s with a photograph of a California Driver's license with B.B.'s name.

       c.    Dr. Bayati's office staff prepared a quotation for the procedure indicating that the cost of the surgery would be $21,925. Both WILLIAMS and an individual claiming to be B.B. signed the quotation. Dr. Bayati's office staff also obtained a CareCredit sales draft from Synchrony indicating that a total of $20,000 would be paid from B.B.'s CareCredit account ending in 4942. Both WILLIAMS and an individual claiming to be B.B. signed the sales draft.

       d.    Dr. Bayati performed the surgery on WILLIAMS on October 11, 2024 and billed B.B.'s CareCredit account ending in 4942.

       e.    A couple of weeks later, Dr. Bayati's office was contacted by Synchrony and learned that B.B. had reported that the charge was fraudulent. Dr. Bayati initially believed that B.B. was attempting to get out of paying the $20,000 for the surgery, and sent documentation to Synchrony regarding the transaction.

       f.    Dr. Bayati's office asked WILLIAMS why his purported aunt, B.B., had filed the fraud claim. WILLIAMS stated

---

PAIGE CARTAGENA, with whom WILLIAMS was previously in a romantic relationship. During the June 12 interview, Dr. Bayati indicated that the number subscribed to CARTAGENA was used to communicate with CARTAGENA regarding WILLIAMS' post-op care, not B.B.

that he did not know, and that he would talk to her. WILLIAMS also stated that B.B. was in Dubai at this time.

13. I showed Dr. Bayati a photograph of WILLIAMS, and Dr. Bayati confirmed that WILLIAMS was the person who provided B.B.'s name and received the surgery. I showed Dr. Bayati the photograph from B.B.'s actual California Driver's License, and Dr. Bayati stated that she did not recognize the individual in the photograph.

14. Because defendant used a credit account number issued by Synchrony, which is located outside of California, to pay for a service in California, I believe that defendant's unauthorized use of B.B.'s CareCredit account number affected interstate commerce.

//
//
//
//
//
//
//
//
//
//
//

## V. CONCLUSION

15. For all the reasons described above, there is probable cause to believe that JOSHUA CLIFFORD WILLIAMS violated 18 U.S.C. 1029(a)(2) (Use of an Unauthorized Access Device).

/s/ Dane Fahey
DANE FAHEY, Special Agent
Internal Revenue Service
Criminal Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of June 2025.

_____
HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE